A04A2100. SCOTT v. THE STATE.
(606 SE2d 312)

BLACKBURN, Presiding Judge.
Following his conviction in a bench trial of trafficking in cocaine and possession of a controlled substance, Terrell Scott appeals, maintaining that the trial court erred in (1) denying his motion to suppress and (2) considering evidence not in the record. For the reasons set forth below, we affirm.

On May 17, 2002, Special Agent Danny Craig of the Henry County Police Department went to Scott's residence and took five garbage bags from Scott's garbage cans. Craig took the bags to the police department, where he and other members of the narcotics unit went through the contents of the bags. In the garbage, the officers found a clear plastic bag containing a small amount of marijuana and plastic bags containing cocaine residue. The results of the search of the garbage bags, together with other information gained through an ongoing investigation of Scott's activities, were included in an affidavit used to obtain a warrant for a search of Scott's residence. In the subsequent search, approximately 250 grams of cocaine were found in Scott's bedroom.

1. Scott contends that the trial court erred in denying his motion to suppress. Specifically, he argues that the warrantless search and seizure of the garbage bags were illegal and a violation of his Fourth Amendment rights because the bags were in garbage cans which were not at curbside but instead within the curtilage of his house. We disagree.

The trial court found that the garbage cans were not within the area of the home claimed as curtilage. "Whether evidence is found within the curtilage of a residence is a mixed question of fact and law. On appeal, we accept the trial court's findings of fact unless clearly erroneous, but owe no deference to the trial court's conclusions of law. Instead, we are free to apply anew the legal principles to the facts." (Citation omitted.) *Espinoza v. State.*[1]

---

[1] *Espinoza v. State,* 265 Ga. 171, 172 (1) (454 SE2d 765) (1995).

Since *Katz v. United States*,[2] the touchstone of [Fourth] Amendment analysis has been the question whether a person has a constitutionally protected reasonable expectation of privacy. The Amendment does not protect the merely subjective expectation of privacy, but only those expectations that society is prepared to recognize as reasonable.

(Citations and punctuation omitted.) *Oliver v. United States*.[3] Thus, the warrantless search and seizure of Scott's garbage bags "would violate the Fourth Amendment only if [Scott] manifested a subjective expectation of privacy in [his] garbage that society accepts as objectively reasonable." *California v. Greenwood*.[4]

The curtilage, or "the land immediately surrounding and associated with the home . . . warrants the Fourth Amendment protections that attach to the home." *Oliver*, supra at 180. The United States Supreme Court has "recognized that the Fourth Amendment protects the curtilage of a house and that the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *United States v. Dunn*.[5] The Court "identified the central component of this inquiry as whether the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." (Punctuation omitted.) Id. The Court went on to state

that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

Id. at 301.

At the hearing on the motion to suppress, evidence showed that the garbage cans are kept under an oak tree about 20 to 25 feet from the street. Scott's mother testified that she kept the cans there because mice and rats from a nearby field got into the cans and for that reason she did not want the cans near the house. Once a week, a sanitation employee rolls the cans to a garbage truck, empties them, and then leaves them at curbside. This evidence supports the trial

---

[2] *Katz v. United States*, 389 U. S. 347 (88 SC 507, 19 LE2d 576) (1967).

[3] *Oliver v. United States*, 466 U. S. 170, 177 (104 SC 1735, 80 LE2d 214) (1984).

[4] *California v. Greenwood*, 486 U. S. 35, 39 (108 SC 1625, 100 LE2d 30) (1988).

[5] *United States v. Dunn*, 480 U. S. 294, 300 (107 SC 1134, 94 LE2d 326) (1987).

court's determination that the garbage cans were not kept within the curtilage of the home and that Scott did not manifest a subjective expectation of privacy in his garbage that society would accept as objectively reasonable.

First, the garbage cans were placed at a considerable distance from the house for the specific purpose of avoiding rodent infestation of the house. That is, the cans were placed where they were so that the rodents would not invade the home and its adjacent living area and interfere with the activities of the residents. In addition, the cans were not within an enclosure surrounding the home. The area in which they were kept was, as we have said, an area away from the house used for the storage of the trash cans, and it is undisputed that it was from this area that the sanitation company routinely collected the garbage. Scott expected public sanitation workers to enter that area and remove the trash, which is exactly what the officer here did. Further, Scott had taken no steps to protect the area from observations by passersby. Considering all of these factors, we hold that the trial court did not err in finding that the garbage cans were not within the curtilage of the home. See *United States v. Hedrick*[6] ("[b]ecause the distance between the garbage cans and the public sidewalk was relatively short, the garbage was collected by the garbage service from that location, and the garbage cans were clearly visible from the sidewalk, we hold that Hedrick possessed no reasonable expectation of privacy in the garbage").

Beyond that, we agree with those courts that have held

> that the act of placing garbage for collection is an act of abandonment which terminates any fourth amendment protection because, "absent proof that a person has made some special arrangement for the disposition of his garbage inviolate, he has no reasonable expectation of privacy with respect to it once he has placed it for collection."

*United States v. Vahalik.*[7] See also *United States v. Shelby*[8] ("[i]n our view the placing of trash in the garbage cans at the time and place for anticipated collection by public employees for hauling to a public dump signifies abandonment"); *United States v. Espriella*[9] (joining other federal appellate circuits in holding that placing garbage for collection constitutes abandonment and that warrantless searches of abandoned property do not violate the Fourth Amendment); *United*

---

[6] *United States v. Hedrick*, 922 F2d 396, 400 (7th Cir. 1991).

[7] *United States v. Vahalik*, 606 F2d 99, 101 (5th Cir. 1979).

[8] *United States v. Shelby*, 573 F2d 971, 973 (7th Cir. 1978).

[9] *United States v. Espriella*, 781 F2d 1432, 1437 (9th Cir. 1985).

*States v. Redmon*[10] (concluding that "our society would not accept as reasonable a claim to an expectation of privacy in trash left for collection in an area accessible to the public").

2. Scott also maintains that the trial court erred in considering evidence not in the record. He points out that in its order denying the motion to suppress, the trial court stated: "From the photographs (including a poor copy of one) as well as the Court's own personal knowledge of this location (having passed by the house in the past on trips between home and Locust Grove, Georgia), the [garbage] containers sit at least sixty feet, if not more, from the closest corner of Defendant's residence." Scott argues that the Court's determination that the garbage cans were not within the curtilage of his house was not supported by the record but was based only on the Court's personal belief regarding the distance between the cans and the house.

> In proceedings in which the court is both judge and jury, it must be presumed that the judge has sifted the wheat from the chaff and selected the legal testimony from that which is illegal and incompetent. This presumption prevails unless from the judgment itself it appears that consideration has been given to testimony which should have been excluded.

(Punctuation omitted.) *Fisher v. Great American Mgmt. &c.*[11] Here, it is apparent, on the face of the judgment, that the trial court, in deciding the issue of whether the garbage cans were within the curtilage of Scott's house, improperly considered evidence which was outside the record.

The trial court's determination was not, however, as Scott contends, based solely on the court's personal knowledge. Our de novo review of the undisputed facts of record shows that there was competent evidence presented at the hearing which supported the trial court's finding that the garbage cans were outside the curtilage of the house. Therefore, the only question remaining is a question of law. "A trial court's ruling on a motion to suppress will be upheld if it is right for any reason." *Worsham v. State.*[12] Accordingly, though the trial court considered incompetent evidence in denying the motion to suppress, we must uphold its ruling.

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

---

[10] *United States v. Redmon*, 138 F3d 1109, 1114 (7th Cir. 1998).

[11] *Fisher v. Great American Mgmt. &c.*, 145 Ga. App. 394, 396 (3) (243 SE2d 588) (1978).

[12] *Worsham v. State*, 251 Ga. App. 774 (554 SE2d 805) (2001).

Anna Blitz, for appellant.

Tommy K. Floyd, District Attorney, Blair D. Mahaffey, Alicia C. Gant, Assistant District Attorneys, for appellee.