## A11A0165. BRUNDIGE v. THE STATE.
(714 SE2d 681)

ELLINGTON, Chief Judge.

James Brundige stands accused in the Superior Court of Clarke County of manufacturing marijuana, OCGA § 16-13-30 (j) (1); possessing marijuana with intent to distribute, OCGA § 16-13-30 (j) (1); and possessing a controlled substance, OCGA §§ 16-30-28 (a) (6) (designating clonazepam as a controlled substance); 16-13-30 (a). Brundige filed a motion to suppress and exclude all evidence seized pursuant to two warranted searches of his home, arguing, inter alia, that the first search warrant, which designated "anomalous heat loss" from the residence as the thing to be seized, was not authorized under Georgia law. After a hearing, the trial court denied the motion, and we granted Brundige's ensuing application for an interlocutory

appeal. For the reasons explained below, we affirm.

The record shows the following undisputed facts.[1] On May 21, 2009, a University of Georgia police officer applied for a warrant to search Brundige's home. In the warrant, the officer gave his reasons for believing that there was a marijuana-growing operation inside the home, including "an amount of marijuana in a size that is consistent with a marijuana grow operation," which the officer had found in a garbage can beside the driveway of the house. The officer explained how an electronic thermal detection and imaging device can be used to detect heat loss patterns, including "hot spots" that are consistent with the use of high-intensity lights to grow marijuana indoors. The officer requested a warrant to use such a device to search the residence for "[anomalous] heat loss occurring at the described premises as a result of an indoor marijuana growing operation, which is being possessed in violation of The Georgia Controlled Substances Act[.]" A judge granted the application and issued the warrant.

The officer, along with a detective who was trained as a thermographer, executed the warrant early the following morning. Based on the amount and pattern of heat loss detected by the thermal scanning device when it was pointed at the garage door, the thermographer concluded that there were hot spots inside the garage. The investigating officer went back to the residence one or two days after executing the warrant and left a copy of the warrant with Brundige's father, who answered the door.

On May 26, 2009, the officer applied for a second warrant, relying in part on the thermal scan performed pursuant to the first warrant, this time to enter the residence to search for marijuana, items used in growing marijuana, such as growing lights, records and text messages associated with drug sales, and related evidence. The judge granted the application and issued the warrant. Officers executed the second warrant on May 29, 2009, and seized a quantity of marijuana, clonazepam pills, growing lights, Brundige's computer, and other evidence.

Brundige moved to suppress and exclude all evidence resulting from both searches. The trial court denied his motion, ruling, inter alia, that "anomalous heat loss" is tangible evidence for which a search warrant may be issued under OCGA § 17-5-21 (a) (5). In addition, the trial court rejected Brundige's arguments that the delay in leaving a copy of the first warrant at the residence rendered

---

[1] "The trial court's application of the law to undisputed facts when ruling on [a motion to suppress or a motion in limine to exclude evidence] is subject to de novo appellate review." (Footnote omitted.) *England v. State*, 302 Ga. App. 12, 14 (1) (689 SE2d 833) (2009).

the evidence seized inadmissible and that the warrantless search of his garbage was not authorized. Based on these findings, the trial court denied Brundige's motion to suppress.

1. Brundige takes issue with the trial court's finding that anomalous heat loss is tangible evidence and contends that, because OCGA § 17-5-21 (a) (5) authorizes a search warrant only for tangible evidence, the first search warrant was not authorized under that Code section, with the result that the evidence seized pursuant to the first warrant is inadmissible. Further, he contends that the execution of the first warrant led to the issuance of the second warrant and, therefore, that all of the evidence seized in the execution of the second warrant is inadmissible under "the fruit of the poisonous tree" doctrine.

(a) As the State concedes, government agents must obtain a search warrant before aiming a thermal scanning device at a residence to detect relative amounts of heat emanating from the home. *Kyllo v. United States*, 533 U. S. 27, 38-40 (III) (121 SC 2038, 150 LE2d 94) (2001).[2] Georgia's search warrant statute provides, inter alia, that an appropriate judicial officer "may issue a search warrant for the seizure of . . . [a]ny item, substance, object, thing, or matter, other than the private papers of any person, which is tangible evidence of the commission of the crime for which probable cause is shown." OCGA § 17-5-21 (a) (5). By definition, a search warrant under this subsection must designate tangible evidence of an offense as the objective of the search. The phrase "tangible evidence" is not defined in Georgia's Criminal Procedure Code, or in any of the disparate Code sections in which the General Assembly has used that phrase.[3]

> In construing [a] statute, we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes

---

[2] See generally Wayne R. LaFave, 1 *Search and Seizure, A Treatise on the Fourth Amendment*, § 2.2 (e) (4th ed. 2004).

[3] See, e.g., OCGA §§ 9-11-30 (b) (1) (regarding attaching a subpoena for the production of documentary or tangible evidence to a notice of deposition); 17-5-1 ("When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within the person's immediate presence" and may seize "any stolen or embezzled property, any item, substance, object, thing, or matter, the possession of which is unlawful, or any item, substance, object, thing, or matter, other than the private papers of any person, which is tangible evidence of the commission of a crime against the laws of this state."); 34-8-197 (h) (2) (B) (regarding an individual's obligation to provide tangible evidence of his or her efforts to obtain work while receiving unemployment benefits); 50-27-3 (24) (defining a ticket as tangible evidence issued by the lottery to provide participation in a lottery game, as distinguished from an intangible share).

some language mere surplusage. At the same time, we must
seek to effectuate the intent of the legislature.

(Citation and punctuation omitted.) *O'Neal v. State*, 288 Ga. 219,
220-221 (1) (702 SE2d 288) (2010). With these principles in mind, we
have reviewed legal and general dictionaries to discern the common
and ordinary meaning of the phrase "tangible evidence."[4] We note
that logic dictates that use of the modifier "tangible" distinguishes
such evidence from its opposite type, that is, intangible evidence. The
phrase "intangible evidence" has been used to describe testimony or
verbal statements.[5] Because heat radiating from a building is not
simply testimony or verbal evidence and because it is definable and
measurable; it is real and substantial, rather than imaginary; it is
capable of being clearly grasped by the mind; and it can, at least in
some cases, be perceived through the sense of touch, we conclude
that heat loss that is measured and recorded by a thermal scanner
fits within the scope of "tangible evidence" as that term is used in
OCGA § 17-5-21 (a) (5). Accordingly, the trial court did not err in
concluding that that Code section authorized the first search war-
rant issued in this case, for the seizure of "anomalous heat loss"
occurring at Brundige's home.[6]

---

[4] See, e.g., *Black's Law Dictionary* (9th ed. 2009) (defining "tangible evidence" as
"[p]hysical evidence that is either real[, that is, '[p]hysical evidence (such as clothing or a knife
wound) that itself plays a direct part in the incident in question,'] or demonstrative[, that is,
'[p]hysical evidence that one can see and inspect (i.e. an explanatory aid, such as a chart, map,
and some computer simulations) and that, while of probative value and [usually] offered to
clarify testimony, does not play a direct part in the incident in question']."); *The Law
Dictionary* (Anderson Publishing Co. 2002) (defining "tangible" as "descriptive of something
which may be felt or touched; corporeal"); *Webster's Third New Intl. Dictionary* (G. & C.
Merriam Co. 1976) (defining "tangible" as "capable of being touched"; "substantially real:
material"; "capable of being realized by the mind: conceived or thought of as definable or
measurable"); *Random House Webster's Unabridged Dictionary* (Random House, Inc. 2d ed.
1998) (defining "tangible" as "1. capable of being touched; discernible by the touch; material
or substantial. 2. real or actual, rather than imaginary or visionary: the tangible benefits of
sunshine. 3. definite; not vague or elusive: no tangible grounds for suspicion); *Collins English
Dictionary, Complete and Unabridged* (HarperCollins Publishers 10th ed. 2009) (defining
"tangible" as "1. capable of being touched or felt; having real substance: a tangible object; 2.
capable of being clearly grasped by the mind; substantial rather than imaginary: tangible
evidence; 3. having a physical existence; corporeal: tangible assets").

[5] *Murray v. United States*, 487 U. S. 533, 536-537 (II) (108 SC 2529, 101 LE2d 472) (1988)
(explaining that the exclusionary rule and the independent source doctrine apply both to
tangible materials seized during an unlawful search and to intangible evidence, that is,
testimony concerning knowledge acquired during a search); *Wong Sun v. United States*, 371
U. S. 471, 485-486 (II) (83 SC 407, 9 LE2d 441) (1963) (explaining that the exclusionary rule
applies both to "physical, tangible materials" seized during an unlawful search and "verbal
evidence," such as statements overheard during an unlawful invasion); *Dixie Ohio Express v.
Brackett*, 106 Ga. App. 862, 873 (7) (128 SE2d 642) (1962) ("Real evidence is such evidence as
is addressed directly to the senses of the court or jury and which speaks to them without the
intervention of the testimony of witnesses.") (citations omitted).

[6] Because we conclude that the first search warrant was authorized under OCGA §

(b) We note that, when the United States Supreme Court decided *Kyllo v. United States*, electronic thermal scanning, a sense-enhancing technology that can be used to discern a person's activities that are being conducted in a private, constitutionally protected area,[7] was not "in general public use." (Citation and punctuation omitted.) *Kyllo v. United States*, 533 U. S. at 34 (III). As Brundige notes, the Georgia General Assembly could prohibit surveillance through the use of thermal scanning technology, as it has done with devices that allow the user to observe or record sounds, visual images, or wire, oral, or electronic communications. OCGA § 16-11-62 (2).[8] In that event, the General Assembly may also opt to provide special "investigation warrant" procedures to allow police officers to conduct surveillance using a thermal scanning device, as it has done for devices currently embraced within OCGA § 16-11-60 et seq. See OCGA § 16-11-64.[9] The issue of whether the general provisions of OCGA § 17-5-21 would still

---

17-5-21 (a) (5), we will not review the trial court's conclusion that the warrant was also authorized under OCGA § 17-5-21 (a) (1), which authorizes search warrants for "[a]ny instruments, articles, or things, including the private papers of any person, which are designed, intended for use, or which have been used in the commission of the offense in connection with which the warrant is issued[.]" In addition, having rejected Brundige's argument that the first search warrant was unauthorized, we need not reach the issue of whether the inclusion of evidence seized pursuant to the first warrant in the application for the second warrant undermined the legitimacy of the second warrant. Cf. *Kyllo v. United States*, 533 U. S. at 40 (III).

[7] See *Kyllo v. United States*, 533 U. S. at 29-30 (I); *People v. Deutsch*, 44 Cal. App. 4th 1224, 1229-1230 (I) (52 Cal. Rptr. 2d 366) (1996); John Wesley Hall, 1-9 Search and Seizure § 9.15 (3d ed. 2010) (Electronic thermal scanning does not merely measure wasted heat. Rather, "a trained thermal imaging operator can likely determine that a room is occupied and likely what the occupant of the room is doing (such as watching television, eating a meal, exercising, going to the bathroom, or even having sex).") (footnotes omitted).

[8] With specified exceptions, it is unlawful, "through the use of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view[.]" OCGA § 16-11-62 (2). OCGA § 16-11-60 (1) defines "device" as, with certain exceptions,

an instrument or apparatus used for overhearing, recording, intercepting, or transmitting sounds or for observing, photographing, videotaping, recording, or transmitting visual images and which involves in its operation electricity, electronics, or infrared, laser, or similar beams[, including but not limited to] . . . any camera, photographic equipment, video equipment, or other similar equipment or any electronic, mechanical, or other apparatus which can be used to intercept a wire, oral, or electronic communication[.]

[9] OCGA § 16-11-64 (b) provides:

When in the course of his or her official duties, a law enforcement officer desiring to make use of any device, but only as such term is defined in Code Section 16-11-60, and such use would otherwise constitute a violation of Code Section 16-11-62, the law enforcement official shall act in compliance with the provisions provided for in this part.

See also OCGA § 16-11-64 (c) (investigation warrants permitting the use of a device as defined in OCGA § 16-11-60); 18 USC § 2510 et seq. (The Crime Control and Safe Streets Act of 1968, Title III) (regulating the interception and disclosure of wire, oral, and electronic communications); Wayne R. LaFave, 1 *Search and Seizure, A Treatise on the Fourth Amendment*, § 2.2 (f) (4th ed. 2004).

apply if thermal scanning is made a prohibited type of surveillance, however, is not before us in this case.

2. Brundige contends that the failure of an officer who executes a search warrant to contemporaneously leave a copy either with someone or in a conspicuous place on the premises, as required by OCGA § 17-5-25,[10] "is not merely a minor technical flaw, but rather a violation of constitutional magnitude." Based on this, Brundige contends that the officer's failure in this case to leave a copy of the first warrant immediately after executing it by conducting the thermal scan requires suppression of the evidence seized in the execution of the warrant.

As with other statutory warrant requirements, a violation of OCGA § 17-5-25 "does not necessarily authorize evidence suppression." *State v. Stafford*, 277 Ga. App. 852, 853 (627 SE2d 802) (2006). On the contrary, OCGA § 17-5-31 provides that "[n]o search warrant shall be quashed or evidence suppressed because of a technical irregularity not affecting the substantial rights of the accused." Therefore, "absent some showing of prejudice by the defendant," the failure to leave a signed and dated copy of the warrant is an omission that is "technical in nature and not grounds for suppression." *State v. Stafford*, 277 Ga. App. at 854.

The record shows that there was merely a one- or two-day delay after the execution of the first warrant before the officer left a copy at the residence. Further, the only thing seized in the execution of the first search warrant was a thermal image, and not the personal property of any resident of the house. Brundige has not specified any harm that he suffered as a result of the officer's delay in complying with OCGA § 17-5-25. Under these circumstances, we conclude that Brundige has not shown that he was prejudiced by the short delay in his receipt of a copy of the first warrant. Consequently, the trial court did not err in denying Brundige's motion to suppress on this basis. *State v. Stafford*, 277 Ga. App. at 854.

3. Brundige contends that he had a subjective expectation of privacy in the garbage in which police officers found marijuana that was part of the basis for the first and second warrant applications. In addition, he contends that a local ordinance that prohibits the unauthorized rummaging through trash in his community[11] shows

---

[10] "If [a search] warrant is executed, the duplicate copy shall be left with any person from whom any instruments, articles, or things are seized; or, if no person is available, the copy shall be left in a conspicuous place on the premises from which the instruments, articles, or things were seized." OCGA § 17-5-25. See OCGA § 17-5-24 (A search warrant "shall be issued in duplicate.").

[11] Brundige cites to Athens-Clarke County Ordinance § 3-5-17 (c), which concerns

that society accepts his expectation of privacy as objectively reasonable. As a result, he contends, the warrantless search of his garbage was illegal, and the evidence seized pursuant to both search warrants, which were issued based in part on the marijuana found in the garbage, is inadmissible.

The warrantless search and seizure of garbage violates the Fourth Amendment only if the person who discarded the garbage "manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable." (Citations omitted.) *California v. Greenwood*, 486 U. S. 35, 39 (II) (108 SC 1625, 100 LE2d 30) (1988).[12] In *California v. Greenwood*, the United States Supreme Court concluded that "society would not accept as reasonable [the] respondents' claim to an expectation of privacy in trash left for collection in an area accessible to the public," in that case, at the curb outside the curtilage of the home. Id. at 41 (II). In reaching that conclusion, the High Court found that the express purpose of placing garbage at one's curb for collection is to "convey[ ] it to a third party, the trash collector, who might himself [then] sort[ ] through [the] trash or permit[ ] others, such as the police, to do so[,]" and this defeats a claim to Fourth Amendment protection.[13] Id. at 40 (II). In applying this principle, this Court has held that

> the act of placing garbage for collection is an act of abandonment which terminates any [F]ourth [A]mendment protection because, absent proof that a person has made some special arrangement for the disposition of his garbage inviolate, he has no reasonable expectation of privacy with respect to it once he has placed it for collection.

(Citation, punctuation and footnote omitted.) *Scott v. State*, 270 Ga. App. 292, 294 (1) (606 SE2d 312) (2004).

Even if the Athens-Clarke County trespassing ordinance protects garbage placed for collection on county streets from snoops, thieves, and vandals, such trash is still subject to inspection by county employees. Athens-Clarke County Ordinance § 3-5-17 (c). Nothing in the record shows that Brundige made any special

---

"[t]respassing, etc." and provides as follows:

> It shall be unlawful for any unauthorized person to rummage in any garbage can or to hunt for any materials in any garbage can for any purpose whatsoever on the streets of Athens-Clarke County. For the purpose of this section, "unauthorized person" shall not mean a person in the employ of Athens-Clarke County[.]

[12] See also *Scott v. State*, 270 Ga. App. 292, 294 (1) (606 SE2d 312) (2004) (accord); *Perkins v. State*, 197 Ga. App. 577, 579 (1) (398 SE2d 702) (1990) (accord).

[13] See Wayne R. LaFave, 1 *Search and Seizure, A Treatise on the Fourth Amendment*, § 2.6 (c) (4th ed. 2004).

arrangement for the disposition of his garbage inviolate; rather, he placed his garbage in a can and put the can near the curb so that the trash collector would take the garbage and dispose of it. The trial court did not err in ruling that Brundige exposed his garbage to the public sufficiently to defeat his claim to Fourth Amendment protection. *Scott v. State*, 270 Ga. App. at 294 (1).

*Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED JULY 14, 2011 — 

*Benjamin A. Pearlman*, for appellant.

*Kenneth W. Mauldin, District Attorney, Antonio E. Veal, Assistant District Attorney*, for appellee.