## S11G1821. BRUNDIGE v. THE STATE.

(735 SE2d 583)

HINES, Justice.

This Court granted a writ of certiorari to the Court of Appeals in *Brundige v. State*, 310 Ga. App. 900 (714 SE2d 681) (2011), to determine whether the definition of "tangible evidence," as that term is used in OCGA § 17-5-21 (a) (5), includes evidence gained by thermal imaging. Although we find that the Court of Appeals was incorrect in determining that the term "tangible evidence" encompasses the evidence at issue, we nonetheless affirm that Court's judgment.

The record reveals that in May 2009, Detective Brandon Cain, a University of Georgia police officer assigned to a drug task force, after receiving a tip from a confidential informant, investigated an individual who was suspected of growing marijuana. The informant told Cain that the suspect had sold marijuana and growing paraphernalia to him, and offered to help the informant begin his own grow operation, and that the informant had been in a car with the suspect when marijuana was present. Investigation revealed that the suspect had been convicted of manufacturing marijuana and possession with intent to distribute in connection with an August 2000 incident. Detective Cain conducted a "trash pull" at the suspect's house, removing trash bags from trash cans located at the edge of the roadway, and found "an amount of green leafy material that field tested positive for marijuana" and items consistent with an operation devoted to growing marijuana indoors.

During his investigation, Detective Cain discovered that the suspect visited the residence of James Brundige nine times in one week. Cain then conducted a "trash pull" at Brundige's residence and found "pieces of plastic Ziploc bags . . . [an] empty rolling papers packet[,] and an amount of marijuana in a size that is consistent with a marijuana grow operation." An examination of Brundige's criminal history revealed a felony arrest for marijuana possession in 2003 and a misdemeanor arrest for marijuana possession in 2008. Cain then compared the electrical use of Brundige's residence with that of a nearby home that was approximately the same size; it showed a "considerable disparity" in power consumption between the two homes over the course of a year, with Brundige's residence consuming up to nine times the electricity of the similar home.

Detective Cain resolved to gain further information regarding activity in Brundige's residence by using a thermal detection device that would remotely sense the differing temperatures of the surface of the home, and of the immediate area around it; this would allow an inference to be made about the heat inside the various areas of the

house, which might indicate an operation to grow marijuana. In *Kyllo v. United States*, 533 U. S. 27 (121 SC 2038, 150 LE2d 94) (2001), the United States Supreme Court determined that using thermal imaging to obtain information regarding the interior of a home constituted a search, and therefore was presumptively unreasonable without a warrant. In light of that precedent, Detective Cain sought and obtained a warrant to conduct a thermal imaging search of Brundige's residence, citing the results of his investigation as the basis for probable cause. In issuing the warrant, the judge stated that "there is probable cause to believe that a crime is being committed or has been committed," and that an indoor marijuana growing operation was on the premises. The warrant authorized Detective Cain to "search and seize" the "[a]nomalous heat loss occurring at the described premises . . . ."

Pursuant to that warrant, on May 22, 2009, Cain and another detective used a thermal imaging device to examine the exterior of the house and detected an amount of heat coming from Brundige's garage considered to be abnormal, especially when compared with the heat loss from a nearby similar house.[1] On May 26, 2009, Cain sought and obtained a second search warrant for a physical search of the interior of Brundige's home. The affidavit for the second warrant stated as the basis for probable cause the identical information that was contained in the application for the first search warrant, with the only additional information being the thermal imaging evidence. The judge authorized the law enforcement officers to "enter, search and seize . . . the person, premises, or property," and listed a variety of items that would be connected with a marijuana growing operation that were suspected of being on the premises. The second search warrant was executed, and officers seized items that are alleged to be evidence of a marijuana growing operation. As a result, Brundige was charged with multiple crimes; he filed a motion to suppress all evidence from the two warrant supported searches. The trial court denied the motion, and the Court of Appeals granted an interlocutory appeal. Further facts can be found in the opinion of the Court of Appeals. See *Brundige*, supra.

As noted above, under *Kyllo*, supra, a scan of a person's home with a thermal imaging device is a Fourth Amendment search that ordinarily requires a warrant. However, Brundige claims that securing such a warrant is not authorized under OCGA § 17-5-21 (a) (5). That statute provides that a judicial officer may issue a search

---

[1] There is no indication in the record that a warrant was secured to perform a search of this second home. See *Kyllo*, supra.

warrant upon a showing of probable cause for the seizure of "[a]ny item, substance, object, thing, or matter ... which is *tangible evidence* of the commission of the crime for which probable cause is shown." OCGA § 17-5-21 (a) (5) (emphasis supplied).[2] The Court of Appeals determined that thermal imaging evidence was "tangible evidence" within the meaning of the statute, *Brundige*, supra at 903, and thus affirmed the trial court's denial of Brundige's motion to suppress the anomalous heat loss evidence obtained through the first search warrant.[3]

---

[2] OCGA § 17-5-21 reads:

(a) Upon the written complaint of any certified peace officer of this state or its political subdivisions charged with the duty of enforcing the criminal laws and otherwise as authorized in Code Section 17-5-20 under oath or affirmation, which states facts sufficient to show probable cause that a crime is being committed or has been committed and which particularly describes the place or person, or both, to be searched and things to be seized, any judicial officer authorized to hold a court of inquiry to examine into an arrest of an offender against the penal laws, referred to in this Code section as "judicial officer," may issue a search warrant for the seizure of the following:

(1) Any instruments, articles, or things, including the private papers of any person, which are designed, intended for use, or which have been used in the commission of the offense in connection with which the warrant is issued;

(2) Any person who has been kidnapped in violation of the laws of this state, who has been kidnapped in another jurisdiction and is now concealed within this state, or any human fetus or human corpse;

(3) Stolen or embezzled property;

(4) Any item, substance, object, thing, or matter, the possession of which is unlawful; or

(5) Any item, substance, object, thing, or matter, other than the private papers of any person, which is tangible evidence of the commission of the crime for which probable cause is shown.

(b) When the peace officer is in the process of effecting a lawful search, nothing in this Code section shall be construed to preclude him from discovering or seizing any stolen or embezzled property, any item, substance, object, thing, or matter, the possession of which is unlawful, or any item, substance, object, thing, or matter, other than the private papers of any person, which is tangible evidence of the commission of a crime against the laws of this state.

(c) Any retired judge or judge emeritus of a state court may issue search warrants as authorized by this Code section if authorized in writing to do so by an active judge of the state court of the county wherein the warrants are to be issued.

(d) Notwithstanding any provisions of Code Section 17-5-20 or other provisions of this Code section to the contrary, with respect to the execution of a search warrant by a certified peace officer employed by a university, college, or school, which search warrant will be executed beyond the arrest jurisdiction of a campus policeman pursuant to Code Section 20-3-72, the execution of such search warrant shall be made jointly by the certified peace officer employed by a university, college, or school and a certified peace officer of a law enforcement unit of the political subdivision wherein the search will be conducted.

[3] The scope of the writ of certiorari in this case does not embrace any statutory provision other than OCGA § 17-5-21 (a) (5).

In applying the rules of statutory construction, this Court is bound to construe the language the General Assembly has chosen "according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. [Cits.] At the same time, we must seek to effectuate the intent of the legislature. [Cit.]" *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003). As the Court of Appeals noted, the term "tangible evidence" is not defined in OCGA § 17-5-21 or elsewhere in the Code. Although the Court of Appeals looked to various dictionaries to discern the term's meaning, that Court also looked to authority that mentioned "intangible evidence," and considered "tangible evidence" to be that which was not mentioned as "intangible evidence" in that authority. However, in doing so, the Court of Appeals went astray. Although *Murray v. United States*, 487 U. S. 533, 536-537 (II) (108 SC 2529, 101 LE2d 472) (1988), and *Wong Sun v. United States*, 371 U. S. 471, 485-486 (II) (83 SC 407, 9 LE2d 441) (1963), both cited by the Court of Appeals, each note that the exclusionary rule applies to both tangible evidence seized during an unlawful search, and testimony regarding knowledge acquired during that search, that does not mean that "testimony" is the opposite of "tangible evidence," and that any evidence other than testimony is therefore "tangible evidence"; neither case was attempting to define the terms or parameters of "tangible evidence" or "intangible evidence." That those opinions mentioned a subset of intangible evidence does not mean that all other evidence is therefore "tangible." Indeed, both of those opinions seem to equate "tangible" with a more traditional use of the term as applying to a physical object. See *Murray*, supra at 536 ("The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, [cit.], and of testimony concerning knowledge acquired during an unlawful search. [Cit.] Beyond that, the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial . . . ."); *Wong Sun*, supra at 485 ("The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion. . . . [T]he Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of 'papers and effects.' "). Accordingly, the Court of Appeals erred when it concluded that "tangible evidence" as used in OCGA § 17-5-21 (a) (5) is that which is not "testimony or verbal statements." *Brundige*, supra at 903.

Nor do we believe that the term "tangible evidence" as used in the statute otherwise embraces the "amorphous heat loss" captured by the thermal imaging used here. Rather, the word "tangible" must be

given some effect, or become mere surplusage. See *Slakman*, supra. Although the Court of Appeals noted that heat radiating from a building is "real and substantial, rather than imaginary[,]" such a formulation would cause "tangible" to become superfluous in the wording of OCGA § 17-5-21 (a) (5); there is no such thing as imaginary evidence.

Giving the word "tangible" full effect, it appears that the General Assembly intended "tangible evidence" to mean evidence that is essentially an object with material form that could be touched by a person. See *New Shorter Oxford English Dictionary* (Clarendon Press 1993) (defining "tangible" as "[a]ble to be touched; discernible or perceptible by touch; having material form"; from Latin *tangere*, "to touch"); *Webster's Third New International Dictionary* (G. & C. Merriam Co., 1971) ("tangible" means "capable of being touched: able to be perceived as materially existent, esp. by the sense of touch"); *American Heritage Dictionary of the English Language* (Houghton Mifflin Co., 1992) ("tangible" is that which is "[d]iscernible by the touch; palpable . . . [p]ossible to touch . . . real or concrete"). That meaning does not include the remotely-sensed heat at issue here.[4]

The history of the statute also supports this construction. OCGA § 17-5-21 (a) (5)'s enactment, and its wording, was largely the product of then-precedent of the United States Supreme Court holding that certain concepts of property rights governed analysis of the protections afforded by the Fourth Amendment to the Constitution of the United States, and drew a distinction between "tangibles" other than private papers that could be the subject of a search warrant, and "mere evidence" that could not. See *Brogdon v. State*, 287 Ga. 528, 529-534 (2) (697 SE2d 211) (2010). OCGA § 17-5-21 (a) (5) was a "statutory rebuff" to that precedent. Id. at 533. And, the United States Supreme Court now has an understanding of "tangible evidence" similar to that which we embrace today. In *United States v. New York Tel. Co.*, 434 U. S. 159, 169-170 (III) (98 SC 364, 54 LE2d 376) (1977), the Supreme Court considered a Federal Rule that defined property that could be seized pursuant to a warrant "to include documents, books, papers and any other tangible objects," and discerned that the definition did *not* include a record of the electrical impulses caused by a dialed telephone, as such are "intangible." The thermal heat registers at issue here are akin to such

---

[4] Of course, should the General Assembly wish to establish a statutory scheme to authorize warrants to capture heat loss from structures, it has the power to do so. See, e.g., OCGA § 16-11-64 et seq., authorizing electronic surveillance warrants in order to capture sounds.

impulses when viewed in light of the normal meaning of the word "tangible."

However, the fact that the initial thermal imaging warrant was not authorized by OCGA § 17-5-21 (a) (5) does not, in this instance, result in the reversal of the judgment of the Court of Appeals. In issuing the first warrant, the judge specifically stated that "there is probable cause to believe that a crime is being committed or has been committed," and that an indoor marijuana growing operation was on the premises. And, the second warrant, which authorized the entry of Brundige's home and the seizure of physical, tangible evidence relating to the manufacture and sale of marijuana, was supported by the same information as that which was in the first warrant, with the only additional information being that gained from the thermal imaging search. As discussed above, the thermal imaging search pursuant to the first warrant was not authorized by OCGA § 17-5-21 (a) (5) and was for a purpose not authorized by that provision, to wit, the acquisition of thermal imaging information. Assuming that obtaining the thermal imaging information was not otherwise authorized, when faced with improperly obtained evidence, the question becomes whether, excising the evidence improperly obtained, probable cause nonetheless exists to issue a warrant. See *Carter v. State*, 283 Ga. 76, 77 (2) (656 SE2d 524) (2008); *Rothfuss v. State*, 160 Ga. App. 863, 864 (288 SE2d 579) (1982). And here, we have no hesitation concluding that it does. Indeed, the other evidence was, by itself, actually found by the trial court to establish probable cause for a search of the premises. Accordingly, the evidence seized under the second warrant is admissible.[5]

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 15, 2012.

*Benjamin A. Pearlman*, for appellant.
*Kenneth W. Mauldin, District Attorney, Antonio E. Veal, Brian V. Patterson, Assistant District Attorneys*, for appellee.

---

[5] This resolution makes it unnecessary to address the second question this Court posed on certiorari, namely whether evidence obtained by a search warrant must be suppressed when there is an intentional delay in executing the mandate set forth in OCGA § 17-5-25 that a duplicate copy of the warrant be left at the searched premises. There is no dispute that OCGA § 17-5-25 was complied with in the execution of the second warrant.