**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 17, 2023**

# In the Court of Appeals of Georgia

A23A0526. TATUM v. THE STATE.

GOBEIL, Judge.

Following a bench trial, Mark Joseph Tatum was convicted of being a "peeping Tom" and invasion of privacy. On appeal, Tatum argues that the trial court erred in denying his motion to suppress/motion in limine regarding the contents of his cell phone because the arresting deputy illegally accessed a video on his cell phone absent a search warrant; and the later-obtained warrant was tainted as fruit of the poisonous tree because it was based on the deputy's observations during the initial warrantless search. For the reasons that follow, we affirm.

We apply the following principles upon appellate review of a ruling on a motion to suppress:

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. These principles apply equally whether the trial court ruled in favor of the State or the defendant.

*Brown v. State*, 293 Ga. 787, 803 (3) (b) (2) (750 SE2d 148) (2013) (citation and punctuation omitted). When "the evidence at a suppression hearing is uncontroverted and the credibility of witnesses is not in question, we conduct a de novo review of the trial court's application of the law to the undisputed facts." *Jones v. State*, 291 Ga. 35, 36-37 (1) (727 SE2d 456) (2012).

The uncontroverted evidence adduced at the motion to suppress hearing and stipulated to by the parties shows that on July 15, 2018, at 10:34 p.m., the Madison County 9-1-1 center received a call regarding an unknown individual taking photographs or recording with a cell phone through the bedroom of an 18-year-old female resident. Will Townsend, a deputy with the Madison County Sheriff's Office, was dispatched to the location. Deputy Townsend encountered an individual, later

2

identified as Tatum, walking in the vicinity of the complainant's residence. Townsend stopped his vehicle and asked Tatum what he was doing, and Tatum responded that he was "out walking around." Tatum initially denied that he had a cell phone on his person. Townsend observed the outline of an object that appeared to be a cell phone in Tatum's front pants pocket. When asked about the object, Tatum pulled out a cell phone from his pocket and claimed that he had forgotten that he had his phone on him. Townsend noticed that Tatum's cell phone had a camera lens in the center of the back of the phone similar to the one reported by the 911 caller.

Deputy Townsend asked Tatum if he would be willing to show him the last picture he had taken on his phone. After some back-and-forth, Tatum agreed to pull up the photo gallery and show the deputy. As Tatum was on his phone, he tilted the phone away from the deputy. Townsend noticed that Tatum's hand was shaking and he appeared "extremely" nervous. Townsend observed a thumbnail-size photograph of a girl standing by a window in a room. Based on his belief that Tatum was trying to delete something, Townsend seized the cell phone from Tatum's hand "to preserve the evidence." The deputy went back to his patrol car and viewed a video on Tatum's phone, which depicted a female standing in a bedroom, with her breasts exposed, folding laundry. Townsend locked the screen and did not further search the phone.

3

Law enforcement later obtained and executed a search warrant to view the contents of Tatum's phone, and recovered photographs and a video showing a woman folding laundry while not wearing a shirt.

Based on the foregoing, a grand jury returned an indictment charging Tatum with being a peeping Tom, invasion of privacy, and tampering with evidence. Tatum filed a motion to suppress/motion in limine to suppress any evidence related to the contents of his cell phone, arguing in relevant part that the initial warrantless seizure and search of his cell phone was illegal, and the later obtained warrant was tainted by the previous illegal search. According to Tatum, any evidence obtained from the cell phone should be suppressed as "fruit of the poisonous tree." After a hearing, the trial court summarily denied the motion.

After a bench trial,[1] the trial court found Tatum guilty of being a peeping Tom and invasion of privacy, and not guilty on the charge of tampering with evidence. He was sentenced to a total term of ten years with the first two years and six months to serve in confinement and the remainder on probation. The instant appeal followed.

On appeal, Tatum contends that the arresting deputy's illegal warrantless viewing of the video on Tatum's cell phone tainted the validity of the later-obtained

---

[1] Tatum waived his right to a jury trial and requested a bench trial.

search warrant, and therefore, any evidence obtained from the phone should have been excluded as fruit of the poisonous tree. Tatum does not contest the actual seizure of the cell phone, but maintains that "[w]hile exigent circumstances may authorize the warrantless physical seizure of a cell phone, a warrant is still required to access its contents." According to Tatum, absent the information concerning the contents of the video recovered from his cell phone (depicting a topless woman taken from outside her window), the affidavit underpinning the search warrant was devoid of probable cause.

In *Riley v. California*, the U. S. Supreme Court held that the police cannot, without a warrant, search digital information on a cell phone seized incident to arrest. 573 U. S. 373, 401 (IV) (134 SCt 2473, 189 LE2d 430) (2014). The Court reasoned that the search incident to arrest exception did not apply because neither rationale — the interest in protecting officer safety or preventing destruction of evidence — justified the warrantless search of cell phone data. Id. at 388-391 (III) (A) (1), (2). It further noted that "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person. The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers. . . ." Id. at 393 (III) (B) (1). Thus, according to the Court, searches of cell phones are far

more intrusive than searches prior to the "digital age," which were "limited by physical realities and tended as a general matter to constitute only a narrow intrusion on privacy." Id. "The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought," the Court noted. Id. at 403 (IV).

However, the U. S. Supreme Court in *Riley* recognized that an exception to the search warrant requirement still "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." 573 U. S. at 402 (IV) (citation and punctuation omitted). And it further noted that, "[s]uch exigencies could include the need to prevent the imminent destruction of evidence in individual cases." Id. See *Arp v. State*, 327 Ga. App. 340, 345 (2) (759 SE2d 57) (2014) (an exigent circumstance generally "is the officer's reasonable belief that such action is a necessary response on his part to an emergency situation") (citation and punctuation omitted); see also *Love v. State*, 290 Ga. App. 486, 487 (659 SE2d 835) (2008) ("An exception to the warrant requirement exists . . . where the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.") (citation and punctuation omitted).

6

Pretermitting whether the arresting deputy's initial warrantless viewing of the video on Tatum's cell phone constituted an illegal search, the record shows that the contents from Tatum's cell phone were acquired pursuant to the execution of a subsequent search warrant and admissible under the independent source doctrine.

> The independent source doctrine allows admission of evidence that was discovered by means wholly independent of any constitutional violation . . . . When properly applied, the ''independent source'' exception allows the prosecution to use evidence only if it was, in fact, obtained by fully lawful means.

*Teal v. State*, 282 Ga. 319, 323-324 (2) (647 SE2d 15) (2007) (citation and punctuation omitted). See *Wilder v. State*, 290 Ga. 13, 16 (2) (717 SE2d 457) (2011) (independent source "doctrine typically operates when evidence discovered as the result of an initial unlawful search is later discovered in a second search conducted by lawful means using information gained independently of the initial search"); see also *United States v. Barron-Soto*, 820 F3d 409, 415-416 (III) (A) (11th Cir. 2016) (applying independent source doctrine to allow admission of evidence where law enforcement officers conducted a warrantless search of cell phones seized from defendants and then later applied for and obtained a search warrant to search the

7

phones; search warrant affidavit did not contain any information learned from the warrantless searches of the phones).

When faced with potentially "improperly obtained evidence, the question becomes whether, excising the evidence improperly obtained, probable cause nonetheless exists to issue a warrant." *Brundige v. State*, 291 Ga. 677, 682 (735 SE2d 583) (2012). Here, the affidavit in support of the search warrant stated, in pertinent part, that Deputy Townsend responded to a call from a resident regarding a suspect "in a peeping [T]om type situation" holding a cell phone outside her bedroom window. Townsend encountered Tatum shortly thereafter in the vicinity of the incident. Tatum initially denied possessing a cell phone, and only admitted to having the phone after Townsend observed the outline of a cell phone in Tatum's front pants pocket. Tatum pulled out the phone from his pocket and opened the photo gallery upon the deputy's request. Tatum then made "furtive movements" as Townsend maneuvered to see the gallery, which led Townsend to believe that Tatum was attempting to delete evidence from the cell phone. The affidavit also described that "Townsend viewed the video and observed a topless white female inside her room being videoed from outside."

8

However, even if the information pertaining to the cell phone video is excised from the search warrant affidavit, we nevertheless conclude that there was probable cause to support the issuance of the search warrant. See *Wingate v. State*, 347 Ga. App. 341, 342 (2) (819 SE2d 502) (2018) (when reviewing the magistrate's probable cause determination for a search warrant, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed). In this case, Deputy Townsend encountered Tatum in the vicinity of the incident shortly after the 911 call, observed Tatum's nervousness and his initial denial that he had a cell phone on his person, as well as his furtive attempts at concealing the contents of his cell phone from Townsend's view. See *Brown v. State*, 269 Ga. 830, 832 (2) (504 SE2d 443) (1998) ("[o]bservation of what reasonably appear to be furtive gestures is a factor which may properly be taken into account in determining whether probable cause exists") (citation and punctuation omitted); *O'Keefe v. State*, 189 Ga. App. 519, 526-527 (3) (376 SE2d 519) (1988) (defendant's behavior upon being stopped for traffic offense, presence of items usually carried in trunk in back seat of defendant's vehicle, and fact that drug detection dog alerted to vehicle during routine booking and bonding procedures provided probable cause to issue warrant authorizing search of vehicle for drugs).

Accordingly, we conclude that the trial court did not err in denying Tatum's motion to suppress/motion in limine. See *Stephens v. State*, 346 Ga. App. 686, 689-693 (2) (816 SE2d 748) (2018) (independent source doctrine authorized admission of video which police had downloaded from defendant's cell phone before obtaining search warrant; video was acquired pursuant to a subsequent valid search warrant and the search warrant was not based upon any information derived from the download); *Brundige*, 291 Ga. at 677-678, 682 (unauthorized initial thermal imaging warrant did not preclude finding of probable cause to issue subsequent warrant for search of defendant's residence, in view of other independent evidence to support finding of probable cause to believe that defendant was growing marijuana, including "trash pull" at defendant's residence resulting in discovery of pieces of plastic bags, empty rolling papers packet, and amount of marijuana being consistent with marijuana grow operation); see also *United States v. Harling*, 705 Fed. Appx. 911, 916-918 (II) (A) (11th Cir. 2017) (unpublished) (finding that officers' decision to seek a warrant to search the contents of USB drives was not prompted by a prior warrantless search of the drives' contents because the warrantless search only "confirm[ed] the veracity" of probable cause they already had). Compare with *Brown v. State*, 330 Ga. App. 488, 491 (1) (767 SE2d 299) (2014) (based solely on information the officer provided

about images he observed during warrantless search of defendant's cell phone, detective applied for and obtained a search warrant to look for evidence of sexual exploitation of a child on the phone; thus "fruits of the warranted search [were] tainted by the prior illegality" and evidence inadmissible), disapproved on other grounds by *Lofton v. State*, 310 Ga. 770, 783-784 (2) n.18 (854 SE2d 690) (2021); *Clare v. State*, 135 Ga. App. 281, 285 (5) (217 SE2d 638) (1975) (where a search warrant is based upon information derived from a previous illegal search, the fruits of the warranted search are tainted by the prior illegality and, unless the information supporting the warrant can be traced to an independent and lawful source, must be suppressed).

*Judgment affirmed. Doyle, P. J., and Senior Appellate Judge Herbert E. Phipps concur*.