319 Ga. 187
FINAL COPY

S23G0955. TATUM v. THE STATE.

COLVIN, Justice.

Appellant Mark Joseph Tatum was convicted of a "peeping Tom" violation and invasion of privacy in relation to his surreptitious recording of a female neighbor through her window.[1]

---

[1] The incident occurred late at night on July 15, 2018, and Appellant was arrested either on July 15, 2018, or very early in the morning on July 16, 2018. On October 17, 2018, Appellant was indicted by a Madison County grand jury for a "peeping Tom" violation pursuant to OCGA § 16-11-61 (Count 1), invasion of privacy in violation of OCGA § 16-11-62 (Count 2), and tampering with evidence in violation of OCGA § 16-10-94 (Count 3). On January 18, 2019, Appellant filed a motion to suppress the evidence obtained from his cell phone. The trial court conducted a hearing on Appellant's motion on October 9, 2019, and denied it by summary order on October 17, 2019. Following Appellant's waiver of his right to a jury trial, the trial court held a bench trial on October 21, 2021. The trial court found Appellant guilty of a "peeping Tom" violation and invasion of privacy but found him not guilty of tampering with evidence. The court sentenced Appellant to five years in prison, with two years and six months to serve for Count 1, and five years of probation for Count 2, to be served consecutively to Count 1, along with various fines and fees. On October 21, 2021, the same day of his sentencing, Appellant appealed his conviction to the Court of Appeals. On April 17, 2023, the Court of Appeals issued a decision affirming Appellant's conviction. See generally *Tatum v. State*, 367 Ga. App. 439 (886 SE2d 845) (2023). We granted Appellant's petition for a writ of certiorari on October 11, 2023. The case was docketed to the term of this Court beginning in December 2023, and oral argument was held on February 8, 2024. The American Civil Liberties Union and the American Civil Liberties Union of Georgia filed a joint brief as amici on behalf of Appellant. The Georgia

Appellant was stopped within several minutes of the neighbor's call to 911, and his cell phone was lawfully seized.[2] Appellant was not placed under arrest, however, until after the arresting officer viewed the contents of Appellant's cell phone without a warrant. Information from this warrantless search was then used in an affidavit to obtain a warrant for the search of Appellant's cell phone, the contents of which the arresting officer had already seen, at least in part. Appellant moved to suppress evidence obtained from the warrantless and warrant-authorized searches of his cell phone under the Fourth Amendment to the United States Constitution and Article I, Section I, Paragraph XIII of the Georgia Constitution ("Paragraph XIII"),[3] but the trial court denied his motion, and the

Association of Criminal Defense Lawyers also filed a separate amicus brief on behalf of Appellant. We thank them for their assistance.

[2] Appellant's counsel previously argued that the seizure was unlawful but conceded in his briefing to the Court of Appeals and during oral argument before this Court that Appellant's cell phone was lawfully seized.

[3] As a general matter, "[w]e have said that because Paragraph XIII contains the same language as the Fourth Amendment, it is to be applied in accord with the Fourth Amendment." *Olevik v. State*, 302 Ga. 228, 234 (2) (b) n.3 (806 SE2d 505) (2017) (citation and punctuation omitted). Although Appellant references both provisions on appeal, he makes no argument that Paragraph XIII should be interpreted as "'provid[ing] a rule substantively

2

Court of Appeals affirmed. See *Tatum v. State*, 367 Ga. App. 439

(886 SE2d 845) (2023). In its analysis, the Court of Appeals assumed

without deciding that the arresting officer's warrantless viewing of

the video on Appellant's cell phone constituted an illegal search, but

it nevertheless concluded that evidence from Appellant's cell phone

was admissible under the independent source doctrine. Id. at 442.

The Court of Appeals reasoned that the affidavit made in support of

the warrant application contained evidence sufficient to support a

finding of probable cause even after excising information gleaned

from the arresting officer's warrantless search. See id. at 442-443.

We granted certiorari and posed the following question:

> Does the independent source doctrine allow the
> admission of cell-phone evidence obtained via search
> warrant without consideration of whether the decision to
> seek the search warrant was prompted by a prior,
> warrantless search of that cell-phone?

different as applied to this case from that of the Fourth Amendment. This case therefore presents no occasion for consideration of whether Paragraph XIII differs from the Fourth Amendment in some circumstances.'" *Hinkson v. State*, 310 Ga. 388, 398 (5) (a) n.5 (850 SE2d 41) (2020) (quoting *White v. State*, 307 Ga. 601, 602 (2) n.2 (837 SE2d 838) (2020)).

3

Appellant argues, and the State concedes,[4] that courts must consider whether the State's decision to seek a search warrant was so prompted. Because the record on appeal does not reflect that the trial court considered whether the warrant application was prompted in this way, we vacate the decision of the Court of Appeals and remand with direction to vacate the judgment of the trial court and to remand to that court for further proceedings consistent with this opinion.

1. (a) At the pre-trial motion to suppress hearing, the State called Deputy Will Townsend, who testified regarding his arrest of Appellant and the circumstances surrounding it. Deputy Townsend's body-worn camera recorded his interactions with Appellant, as described further below. This video was admitted into evidence at the motion to suppress hearing and played for the court. Following the trial court's denial of Appellant's motion to suppress,

---

[4] The State argued it in its brief that we should affirm the decision of the Court of Appeals but conceded at oral argument before this Court that we should vacate the Court of Appeals's decision and remand for further proceedings.

the parties filed stipulations concerning essentially all of the factual issues in the case, including the victim's call to 911, Deputy Townsend's encounter with and arrest of Appellant, Deputy Townsend's warrantless viewing of an incriminating video on Appellant's phone, facts relating to the warrant application, and a description of photographs and of a video of the victim obtained pursuant to the warrant-authorized search. Rather than re-introduce Deputy Townsend's testimony and the recording from his body-worn camera at trial, the State relied entirely upon these stipulations. Accordingly, no evidence was admitted by either party during the guilt phase of Appellant's bench trial.

Evidence from Deputy Townsend's testimony, his body-worn camera, and the parties' stipulations was largely consistent and shows the following. On July 15, 2018, at 10:34 p.m.,[5] the Madison County 911 call center received a call regarding an unknown

---

[5] The parties jointly stipulated that the call was received at 10:34 p.m., but the warrant affidavit states that the call was received at 10:41 p.m., and Deputy Townsend testified that the call was received around 11:30 p.m. A recording of the 911 call is not a part of the record on appeal, and the timing of the call is not material to our legal analysis.

individual taking photographs of an 18-year-old female through a bedroom window. The caller described the individual's cell phone as having a camera lens in the back center of the phone. Deputy Townsend was on duty in the area and was dispatched to respond to the call.

Within minutes of the 911 call, Deputy Townsend encountered Appellant walking in the vicinity of the home from which the call had been made. According to Deputy Townsend, who stated that he regularly patrolled this portion of Madison County, it was unusual for there to be foot traffic in the area at this time of night. Upon encountering Appellant, Deputy Townsend got out of his vehicle and spoke to him. Deputy Townsend told Appellant about the 911 call and asked Appellant if he had a cell phone with him. Though Appellant denied having a cell phone on him, Deputy Townsend observed the outline of an object that appeared to be a cell phone in Appellant's front pants pocket. When Deputy Townsend asked Appellant about the object, Appellant pulled out his cell phone and stated that he had forgotten that he had it with him. Deputy

6

Townsend noticed that Appellant was shaking and that he appeared extremely nervous. Deputy Townsend also noticed that Appellant's phone had a camera lens in the back center of the phone, as described in the 911 call.

Deputy Townsend asked if Appellant would show him the last photograph he had taken. Appellant initially declined, but after Deputy Townsend told Appellant that he could detain him and obtain a search warrant, Appellant agreed. As Appellant was pulling up the gallery of photographs on his phone, he tilted his phone away from the deputy, preventing the deputy from seeing its screen. According to Deputy Townsend, Appellant appeared as if he was trying to delete something, and so Deputy Townsend "grabbed the phone out of his hand" to "preserve the evidence." Immediately after seizing Appellant's phone, and without interacting with it further, Deputy Townsend saw that the phone's camera roll was displayed, and he observed a thumbnail image of a young woman standing in a room through a window. Deputy Townsend put Appellant's phone down on the front seat of his patrol vehicle,

7

handcuffed Appellant, and placed him in the back of the vehicle but left the door open. When placing Appellant in the back seat of his patrol vehicle, Deputy Townsend stated, "You are not under arrest at this point, but you are being detained right now." Once Appellant was seated, Deputy Townsend picked up Appellant's cell phone, clicked on the thumbnail image he had seen while seizing Appellant's phone and watched the corresponding video, which depicted a female standing in a bedroom, with her breasts exposed, folding laundry. Deputy Townsend then locked the screen and did not search the cell phone any further. Deputy Townsend then closed the back door of his patrol car, placed Appellant under arrest, and provided him with a *Miranda* warning. See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

Following Appellant's arrest, law enforcement officers drafted a search warrant application for the phone's digital contents. The affidavit in support of the warrant included much of the information summarized above, including the fact that Deputy Townsend viewed a video on Appellant's phone, which depicted "a topless white female

8

inside her room being videoed from outside." The warrant application was granted, and, on execution of the warrant, investigators found photographs and a video of the victim on Appellant's phone.

(b) As recounted above, the trial court denied Appellant's motion to suppress by means of summary order, which included no findings of fact. Following Appellant's bench trial, the court found Appellant guilty of a "peeping Tom" violation (Count 1) and invasion of privacy (Count 2), but not guilty of tampering with evidence (Count 3). Appellant then appealed his conviction to the Court of Appeals.

The Court of Appeals affirmed the trial court's denial of Appellant's motion to suppress. See *Tatum*, 367 Ga. App. at 443-444. Quoting *Brundige v. State*, 291 Ga. 677, 682 (735 SE2d 583) (2012), the Court of Appeals stated that "[w]hen faced with potentially improperly obtained evidence, the question becomes whether, excising the evidence improperly obtained, probable cause nonetheless exists to issue a warrant." Id. at 442 (citation and

punctuation omitted). In applying this rule, the Court of Appeals assumed without deciding that Deputy Townsend's warrantless viewing of the video on Appellant's cell phone constituted an unlawful search.[6] See id. It then considered other facts contained in the affidavit, including Appellant's proximity to the scene of the crime, his dishonesty about having his phone with him, and his furtive movements in an apparent attempt to delete evidence, and concluded that these facts — all of which occurred prior to Deputy Townsend's unlawful viewing of the phone's contents — were sufficient to support a finding of probable cause, independent of any unlawfully obtained information. See id. at 443.

2. (a) Though the Fourth Amendment protects "the people" from "unreasonable searches and seizures," U. S. Const. Amend. IV, "it is silent about how this right is to be enforced," *Davis v. United States*, 564 U. S. 229, 231 (131 SCt 2419, 180 LE2d 285) (2011). "To supplement the bare text, [the United States Supreme] Court

___

[6] The Court of Appeals did not address whether Deputy Townsend's initial viewing of the thumbnail image on Appellant's phone was an unlawful search.

10

created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." Id. at 231-232. See also *Mapp v. Ohio*, 367 U. S. 643, 655 (III) (81 SCt 1684, 6 LE2d 1081) (1961) (applying the federal exclusionary rule to the states through the Fourteenth Amendment to the United States Constitution); *Mobley v. State*, 307 Ga. 59, 75 (4) (a) (834 SE2d 785) (2019) (holding that OCGA § 17-5-30 "establishes a procedure for applying the exclusionary rule" developed by the United States Supreme Court in state criminal proceedings). The United States Supreme Court has recognized certain exceptions to the exclusionary rule, however, under which impermissibly obtained evidence may remain admissible: one such exception is the independent source doctrine. See *Murray v. United States*, 487 U. S. 533, 537 (II) (108 SCt 2529, 101 LE2d 472) (1988) (citing *Silverthorne Lumber Co. v. United States*, 251 U. S. 385, 392 (40 SCt 182, 64 LE 319) (1920)). As the Supreme Court explained in *Murray*, the independent source doctrine applies "to evidence initially discovered during, or as a

11

consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality." Id. See also *Wilder v. State*, 290 Ga. 13, 16 (2) (717 SE2d 457) (2011) (explaining that the independent source doctrine "operates when evidence discovered as the result of an initial unlawful search is later discovered in a second search conducted by lawful means using information gained independently of the initial search").

In *Murray*, the United States Supreme Court held that the independent source doctrine does not apply if the decision to seek the warrant "was prompted" by information obtained during a prior unlawful search or if information obtained during that unlawful search "was presented to the Magistrate and affected his decision to issue the warrant." *Murray*, 487 U. S. at 542 (III). In *Murray*, federal agents forced entry into a warehouse believed to contain illegal drugs without a warrant. See id. at 535 (I). Upon entry, the agents noted that the warehouse was unoccupied and observed "in plain view numerous burlap-wrapped bales." Id. The agents left the warehouse and kept it under surveillance while they applied for and

12

ultimately obtained a warrant several hours later. See id. at 535-536 (I). The warrant application "did not mention the prior entry[ ] and did not rely on any observations made during that entry." Id. at 536 (I). After the warrant was issued, agents immediately reentered the warehouse and seized numerous bales of marijuana and notebooks containing information regarding the customers to whom the marijuana was to be shipped. See id. The defendants filed a motion to suppress evidence obtained from the agent's warrant-authorized search on the ground that it was tainted by the agents' prior unlawful search. See id. The trial court denied the defendants' motion, and the appellate court affirmed, but the United States Supreme Court granted certiorari, vacated, and remanded for a factual determination of whether the agents' decision to seek a warrant was prompted by their prior unlawful search. See id. at 536 (I), 543-544 (III).

Though decisions of the United States Court of Appeals for the Eleventh Circuit are not binding on this Court, see *State v. Rosenbaum*, 305 Ga. 442, 449-450 (2) (826 SE2d 18) (2019), we take

13

note of two recent Eleventh Circuit cases applying *Murray*: *United States v. Barron-Soto*, 820 F3d 409 (11th Cir. 2016) and *United States v. Noriega*, 676 F3d 1252 (11th Cir. 2012). In both cases, the Eleventh Circuit assessed the applicability of the independent source doctrine using a two-part test. See *Barron-Soto*, 820 F3d at 415 (III) (A); *Noriega*, 676 F3d at 1260 (III) (C). The first part of the test requires courts to "excise from the search warrant affidavit any information gained during the alleged illegal entry and determine whether the remaining information supports a finding of probable cause." *Barron-Soto*, 820 F3d at 415 (III) (A). See *Noriega*, 676 F3d at 1260 (III) (C) (same). This part of the test addresses the Supreme Court's direction in *Murray* regarding whether unlawfully obtained evidence "was presented to the Magistrate and affected his decision to issue the warrant." *Murray*, 487 U.S. at 542 (III). If, after excising information regarding unlawfully obtained evidence from the warrant affidavit, the remaining evidence is sufficient to support a finding of probable cause, courts reach the second part of the test, in which they must "determine whether the officer's decision to obtain

14

a search warrant was 'prompted by' what he observed during the illegal entry." *Barron-Soto*, 820 F3d at 415 (III) (A) (quoting *Noriega*, 676 F3d at 1260 (III) (C)); see *Murray*, 487 U. S. at 543 (III) (same). When applying the second part of this test, the Eleventh Circuit asks "whether the officer would have sought the warrant even if he had not" engaged in the prior unlawful search. *Noriega*, 676 F3d at 1260-1261 (III) (C).

Unlike the Eleventh Circuit, this Court has not expressly stated that the independent source doctrine requires consideration of whether the decision to seek a search warrant was prompted by a prior unlawful search. In most of our past cases, however, we have either engaged with this consideration implicitly or resolved the issue in such a way that the officer's motivation in seeking the warrant was not the determinative issue. See, e.g., *State v. Lejeune*, 277 Ga. 749, 753-755 (3) (A) (594 SE2d 637) (2004) (holding that the independent source doctrine was applicable where evidence was first obtained pursuant to a warrant unsupported by probable cause, but after that first warrant was held invalid, the State gave a

15

redacted version of the case file to a new investigator who lacked particular knowledge of the prior evidence and who later obtained similar evidence based on an independent source pursuant to a second, lawful warrant); *Wilder*, 290 Ga. at 16-17 (2) (holding, without consideration of the State's motivations for pursuing the warrant, that the independent source doctrine did *not* apply to evidence found in a briefcase that was unlawfully *seized* but lawfully searched pursuant to a warrant based on information independent of the seizure); *Price v. State*, 270 Ga. 619, 622-623 (2) (513 SE2d 483) (1999) (applying the independent source doctrine without consideration of the State's motivations for pursuing a warrant, but doing so only in dicta after concluding that the search and seizure of evidence were lawful on other grounds).

We are aware of two cases where we seemingly applied the independent source doctrine without considering whether the State's decision to seek a warrant was prompted by a prior unlawful search: *Reaves v. State*, 284 Ga. 181 (664 SE2d 211) (2008) and *Brundige*, 291 Ga. 677. But those cases do not foreclose the holdings

16

we explain below. In *Reaves*, we appeared to apply the independent source doctrine without consideration of whether the State was prompted to seek a warrant by a prior unlawful search, and without other facts or analysis that made clear why this consideration was unnecessary. See *Reaves*, 284 Ga. at 183-184 (2) (c). The analysis of the independent source doctrine in *Reaves* was scant, however, and nothing said there requires us to forgo application of the analysis called for by *Murray*. See id.

In *Brundige*, we did not expressly apply the independent source doctrine, but we did allow the admission of evidence obtained by means of a warrant-authorized search without addressing whether it was prompted by a prior search held to be unlawful. There, the State suspected that a home was being used as a grow-house for marijuana. See *Brundige*, 291 Ga. at 677. The State obtained a search warrant to use a thermal camera to detect anomalous heat associated with growing activities. See id. at 678. After the State's thermal search of the building revealed heat consistent with grow-lights, the State applied for a second warrant

17

to search the building's interior. See id. The State's second warrant affidavit contained all the information from the first affidavit, plus additional information resulting from the State's thermal search. See id. On review of a challenge from the defendant, this Court held that the State's first search was unlawful for statutory, rather than constitutional reasons: at the time of the search, OCGA § 17-5-21 (a) (5) permitted the search and seizure only of "tangible" things, and heat, we concluded, was not tangible within the meaning of the statute.[7] See id. at 680. We nevertheless held that the second search was lawful, because, even after excising all information obtained during the first search from the second search warrant affidavit, there was sufficient information to support a finding of probable cause. See id. at 682. Though *Brundige* failed to consider whether the second search was prompted by the first, it is distinguishable from the instant case. Because the first search

---

[7] OCGA § 17-5-21 (a) (5) has since been amended to permit the search and seizure of "anything that is tangible or intangible, corporeal or incorporeal, visible or invisible evidence of the commission of a crime for which probable cause is shown, other than the private papers of any person." Ga. L. 2015, p. 1047, § 3.

18

warrant was invalid for statutory reasons, *Brundige* does not expressly ground itself on any constitutional issue, and therefore does not directly involve the Fourth Amendment, the federal exclusionary rule, or exceptions to that rule.[8] Accordingly, it does not affect our decision here.

After consideration of *Murray*, persuasive authority from the Eleventh Circuit Court of Appeals, and our own prior case law, we recognize the following. When applying the independent source doctrine, we are bound to follow *Murray* and therefore must consider whether the State's decision to seek a warrant for evidence previously obtained through unlawful means was prompted by the prior unlawful search. See *Murray*, 487 U. S. at 542 (III). We conclude that the Eleventh Circuit's decisions in *Barron-Soto* and *Noriega* are persuasive as faithful applications of *Murray*. See *Barron-Soto*, 820 F3d at 415 (III) (A); *Noriega*, 676 F3d at 1260-1261 (III) (C). Accordingly, we hold, like the Eleventh Circuit, that if the

---

[8] As noted below, see n.10, infra, to the extent *Brundige* can be read as having applied the independent source doctrine, we disapprove of it as inconsistent with the analysis required in *Murray*.

19

State would have sought the warrant even without the prior illegality, then its decision was not prompted by the prior unlawful search. See *Noriega*, 676 F3d at 1260-1261 (III) (C). But if the State would not have sought the warrant but for its prior unlawful activities, then the warrant was so prompted, and the evidence is not admissible under the independent source doctrine.[9] See id. This is a mixed question of fact and law. As the Supreme Court reasoned in *Murray*, the purpose of the independent source doctrine is to "put[ ] the police in the same, not a *worse*, position than they would have been in if no police error or misconduct had occurred." *Murray*, 487 U. S. at 537 (II) (quoting *Nix v. Williams*, 467 U. S. 431, 443 (II) (B) (104 SCt 2501, 81 LE2d 377) (1984) (emphasis in original)). By the same token, the police should not be in a *better* position because of their misconduct. The rule from *Murray* serves both of these aims: if the second, lawful search was not prompted by the prior unlawful

---

[9] Nothing we have said here obviates the need for courts to consider whether, after excising any unlawfully obtained information from the warrant affidavit, information sufficient to support a finding of probable cause remains. See *Barron-Soto*, 820 F3d at 415 (III) (A); *Noriega*, 676 F3d at 1260 (III) (C).

search, then the independent source doctrine applies, and the State is in the same position it would have been in if the unlawful conduct had not occurred. But if the second search was prompted by the original unlawful search, then the evidence must be excluded so that the State does not benefit from its unlawful conduct. Under such circumstances, the independent source doctrine should not and cannot apply.[10]

(b) We now turn back to the facts of this case, as stipulated by the parties. Here, Deputy Townsend seized Appellant's phone based on his belief that Appellant was attempting to delete evidence. As noted above, Appellant no longer contests the lawfulness of this seizure. See n.2, supra. Deputy Townsend then viewed the digital contents of Appellant's cell phone twice. First, immediately after seizing Appellant's phone, and without manipulating it, Deputy Townsend saw a thumbnail image of a woman displayed on

---

[10] As a result of our holding, we disapprove of *Reaves* and *Brundige* to the extent that either decision can be read as applying the independent source doctrine without engaging in this type of consideration.

21

Appellant's screen. Second, after securing the phone and detaining Appellant, Deputy Townsend picked Appellant's phone back up and viewed a video recording of the victim "standing in a bedroom, with her breasts exposed, folding laundry." The parties dispute whether Deputy Townsend's initial viewing of the thumbnail image constituted an unlawful search, but the State concedes that Deputy Townsend's subsequent viewing of the video was unlawful. The State also conceded at oral argument before this Court that proper application of the independent source doctrine requires consideration of whether an officer's decision to seek a search warrant was prompted by an earlier, unlawful search.

Because the State was correct to make this concession, as explained above, we must consider how to rule on the record before us, as the trial court's summary order denying Appellant's motion to suppress did not include express findings of fact or conclusions of law. The State suggested at oral argument before this Court that we should remand to allow the trial court to determine whether the State's decision to seek a search warrant was prompted by Deputy

Townsend's prior unlawful search. Appellant instead asks us to reverse the decision of the Court of Appeals and vacate his conviction. Though we may consider "the pretrial testimony adduced at the suppression hearing, as well as the trial transcript," when a trial court declines to make express findings of fact, and we are required to "construe the evidence most favorably to uphold the trial court's judgment," *Jones v. State*, 314 Ga. 605, 609 (2) (878 SE2d 505) (2022), the record on appeal remains insufficient to make this determination. See *Murray*, 487 U. S. at 543-544 (III) (remanding for the trial court to determine, in the first instance, whether the warrant-authorized search was prompted by the prior unlawful search). We accordingly vacate the decision of the Court of Appeals and remand to that court with instructions to vacate the judgment of the trial court and remand for further proceedings consistent with this opinion. See *Williams v. State*, 301 Ga. 60, 62 (799 SE2d 779) (2017) (vacating with direction to remand to the trial court for clarification "[g]iven the uncertainty in the trial court's order [regarding the defendant's motion to suppress]"); *Parker v. State*,

255 Ga. 167, 168 (1) (336 SE2d 242) (1985) (remanding for clarification and further hearings, if necessary, because "the court's rulings [were] unclear"). Cf. *Hughes v. State*, 296 Ga. 744, 746 (1) n.6 (770 SE2d 636) (2015) ("If the trial court has made express findings of fact, but not with sufficient detail to permit meaningful appellate review, an appellate court may remand for further findings.").

*Judgment vacated and case remanded. All the Justices concur.*

Decided June 11, 2024.

Certiorari to the Court of Appeals of Georgia — 367 Ga. App. 439.

*McArthur & McArthur, John J. McArthur*, for appellant.

*D. Parks White, District Attorney, Jeffrey C. Lee, Michael M. Coveney, Assistant District Attorneys*, for appellee.

*Hunter J. Rodgers, V. Natasha Perdew Silas, Brandon A. Bullard, Mazie L. Guertin; Cory H. Isaacson*, amici curiae.