NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: October 15, 2025

S25A0727.  TAYLOR v. THE STATE.

LAND, Justice.

A jury found Micah Blake Taylor guilty of malice murder and related crimes in connection with the killing of Regina Trotter.[1] On appeal, Taylor argues that the trial court erroneously admitted social media and cell phone records because the search warrants that led to the seizure of those records lacked probable cause. For

---

[1] The crimes occurred on January 31, 2021. In August 2021, a Heard County grand jury indicted Taylor and co-defendant Jenae Dickinson for malice murder, felony murder, two counts of aggravated assault, and concealing the death of another. Dickinson pleaded guilty to one count of aggravated assault and concealing the death of another and testified against Taylor at trial. In March 2023, Taylor was tried before a jury and was found guilty of all counts. The trial court sentenced Taylor to serve life in prison without the possibility of parole for malice murder and a consecutive ten-year term in prison for concealing the death of another; the remaining counts merged or were vacated by operation of law. Taylor filed a timely motion for new trial, which he amended through new counsel. Following a hearing, the trial court denied Taylor's motion, as amended, on September 11, 2024. Taylor filed a timely notice of appeal, and the case was docketed to this Court's April 2025 term and submitted for a decision on the briefs.

1

the reasons that follow, Taylor's claims fail, so we affirm.

1. The evidence at Taylor's trial showed as follows. Before her murder, Trotter lived in Heflin, Alabama with Taylor and her friend Jonathan Bryant. The aunt of Trotter's boyfriend had loaned Trotter a van, and on January 31, 2021, Taylor took Trotter's van without permission to visit his friend and Jenae Dickinson at her residence near the Georgia-Alabama state line. Taylor and Dickinson returned to Trotter's home with the van later that day, and Trotter told Taylor he could no longer stay at her home because he took the van without permission. Trotter then agreed to drive Taylor and Dickinson back to Dickinson's home. On the ride, Trotter drove, Dickinson sat "propped up behind the passenger seat," and Taylor sat in the back bench seat.

Nearing Dickinson's home, Dickinson directed Trotter down a dirt road and instructed her to pull up to a gate. As Trotter slowed the van, Taylor put "something" around Trotter's neck and began to strangle her. Dickinson put the van in park, and Taylor pulled Trotter into the rear of the van and told Dickinson to drive.

2

Dickinson heard Taylor and Trotter "scuffling" and Trotter struggling to breathe. Dickinson stopped the van at Taylor's direction, and she then heard Taylor drag Trotter out of the vehicle. Taylor returned to the van alone, and he and Dickinson drove away.

The next day, hunters found Trotter's body in a roadside ditch in rural Heard County. She had a braided rope tied around her throat and lacerations to her face and neck. An autopsy determined the causes of death to be strangulation and sharp-force injuries to the head and neck. Investigators located a set of brass knuckles near Trotter's body, as well as Great Value-brand canned potatoes.

Shortly after the crimes, investigators executed a search warrant at Dickinson's residence and found rope like the one found tied around Trotter's neck. Multiple witnesses later testified to seeing Taylor in possession of Trotter's van and purse hours after she was murdered, and investigators soon located Trotter's van, since reported stolen by Trotter's boyfriend's aunt, with Taylor asleep inside. Also inside the van, investigators found the same Great Value-brand canned potatoes as those found by Trotter's body.

Finally, investigators found a bloody towel that testing later revealed to contain DNA matching Taylor, Trotter, and Dickinson. Subsequent testing also identified Taylor's DNA on the brass knuckles found at the crime scene, and Dickinson later testified that those brass knuckles resembled the brass knuckles Taylor had shown her on the day of Trotter's murder.

Following Taylor's arrest, investigators sought and obtained multiple search warrants, one seeking ten days of Taylor's cell phone records, including call logs and cell site location data, and another seeking four days of Taylor's Facebook account activity. Among other things, the warrants yielded various text messages between Taylor and Trotter, including messages where they argued about the van on the day of Trotter's murder, and a Facebook message from Taylor to Dickinson, sent two weeks before Trotter's murder, asking whether Dickinson knew of a "chop shop."[2]

While incarcerated before trial, Taylor described Trotter's

---

[2] A "chop shop" is a "a place where stolen automobiles are stripped of salable parts." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/chop%20shop (website last accessed Oct. 1, 2025)..

murder to his cellmate, who testified at trial that Taylor acted out Trotter's stabbing. Jail surveillance footage played at trial showed Taylor speaking with the cellmate and his reenactment of stabbing Trotter.

2. On appeal, Taylor argues that the trial court erred in admitting evidence of his Facebook message asking Dickinson whether she knew of a chop shop because the search warrant used to obtain that message failed to meet the Fourth Amendment's probable cause requirement. See *Tatum v. State*, 319 Ga. 187, 191 (2024) ("[T]he United States Supreme Court created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." (citation and punctuation omitted)); *Pugh v. State*, 318 Ga. 706, 713 (2024) (the Fourth Amendment to the United States Constitution requires that search warrants be predicated on probable cause "to believe both that a crime is being committed or has been committed and that contraband or evidence of a crime will be found in a particular place." (citation and punctuation omitted)).

Taylor also asserts that admission of the Facebook messages harmed him by strengthening the State's theory that he killed Trotter to steal her van.

Our review of the record reflects that, while Taylor objected to the admission of the Facebook records on relevance grounds at trial, he raised the probable-cause challenge to the search warrant used to obtain those records for the first time in his motion for new trial. So we review this claim for plain error only. See *Williams v. State*, 315 Ga. 490, 494–95 (2023) (applying plain-error review to particularity challenge to search warrant where appellant did not challenge the warrant on that basis before trial or when the evidence obtained with that warrant was introduced at trial). To establish plain error, Taylor "must demonstrate that the alleged error was not affirmatively waived; was clear or obvious, rather than subject to reasonable dispute; affected his substantial rights, meaning that it affected the outcome of the trial court proceedings; and seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Pugh*, 318 Ga. at 717 (cleaned up). "Satisfying all four

6

prongs of this standard is difficult, as it should be," id., and this Court does "not have to analyze all elements of the plain-error test where an appellant fails to establish one of them." *Durden v. State*, 318 Ga. 729, 733 (2024) (citation and punctuation omitted).

Even assuming the search warrant failed to establish probable cause, Taylor's claim fails under the third prong of the plain-error test because he cannot show that the alleged error affected his substantial rights. *Pugh*, 318 Ga. at 719. First, the Facebook evidence was largely cumulative. Although Taylor argues that the State used evidence of the "chop shop" message to support its theory that he murdered Trotter to steal her van, the State also introduced evidence that Taylor did, in fact, steal Trotter's van after he killed her, including eyewitness testimony that Taylor was seen with Trotter's van in the hours after she was murdered and investigators' discovery of Taylor asleep inside the van. And the State elicited Dickinson's testimony that Taylor told her—shortly before Trotter's murder—that he hoped the van would soon be his. Thus, the "chop shop" message was cumulative. See, e.g., *Johnson v. State*, 319 Ga.

7

562, 571–72 (2024) (where challenged evidence was merely cumulative of other properly admitted evidence, any error in its admission did not affect defendant's substantial rights).

Second, the evidence of Taylor's guilt was overwhelming. In addition to Dickinson's eyewitness testimony and Taylor's admissions to his cellmate detailing Trotter's murder, witness testimony established that Taylor was with Trotter immediately before her murder and that he was in possession of Trotter's van and purse shortly after her murder. Police arrested Taylor upon finding him asleep inside Trotter's van. And investigators later connected Taylor to physical evidence found at the location where Trotter's body was dumped. Taylor offers no reason that the verdict would have been any different had evidence obtained with the challenged warrant been excluded. He has therefore failed to meet his burden of showing that any error in the admission of the evidence obtained from his Facebook account likely affected the outcome of his trial, and this enumeration fails. See *Ruthenberg v. State*, 317 Ga. 227, 231 (2023) (where the State presented overwhelming evidence of

8

appellant's guilt, including evidence of appellant's own admissions of guilt and eyewitness testimony identifying him as the killer, appellant failed to satisfy third prong of plain-error test).

3. Taylor next argues that the trial court erred in denying his motion to suppress cell phone records obtained from his service provider because the warrant used to obtain those records lacked probable cause. Assuming without deciding that the warrant lacked probable cause, we conclude that any error in the denial of Taylor's motion to suppress was harmless beyond a reasonable doubt and does not require reversal. See *Hill v. State*, 310 Ga. 180, 188–89 (2020) (even "[w]hen the admission of evidence is an error of constitutional magnitude, it can be harmless error if the State can prove beyond a reasonable doubt that the error did not contribute to the verdict, such as when the evidence at issue is cumulative of other properly-admitted evidence or when the evidence against the defendant is overwhelming." (citation and punctuation omitted)).

Here, the record shows that evidence obtained with the challenged warrant and introduced at trial included Taylor's

incoming and outgoing text messages and calls around the time of the murder. The State mainly used this evidence to detail Taylor's communications with Dickinson and Trotter on the day of Trotter's murder. And those communications revealed Trotter's frustration with Taylor for taking her van, her repeated requests that he return it, and Taylor's noncommittal responses.

These records, however, were almost entirely cumulative of other properly introduced evidence. The State also admitted evidence of Trotter's calls and messages and specifically elicited testimony that those records were identical to Taylor's as to communications between the two. Indeed, the State relied primarily on Trotter's phone records for evidence of communications between her and Taylor. Likewise, multiple witnesses testified about Taylor's and Trotter's communications with each other and with third parties on the days surrounding the murder, much of which concerned Taylor and Trotter's dispute over the van.

Moreover, as we have already discussed, the other evidence of Taylor's guilt was substantial. The State presented significant

10

incriminating evidence, including Dickinson's testimony about how Taylor murdered Trotter, Taylor's confession to his cellmate, Taylor's reenactment of the murder on surveillance video, and Taylor's DNA at the crime scene. Under these circumstances, any error in the trial court's admission of the evidence obtained with the challenged warrant was harmless beyond a reasonable doubt, so this enumeration also fails. See *Hill*, 310 Ga. at 188–89 (rejecting Fourth Amendment challenge to warrant because disputed evidence was cumulative and rendered assumed error harmless); *Hinkson v. State*, 310 Ga. 388, 402–03 (2020) (any error in trial court's denial of motion to suppress on Fourth Amendment grounds was harmless given overwhelming evidence of appellant's guilt).[3]

---

[3] Taylor also claims the trial court erroneously denied his motion for a new trial. But Taylor supports this enumeration only by repeating his claim that the trial court should have excluded evidence obtained via the challenged warrants and by citing *State v. Lane*, 308 Ga. 10 (2020), apparently suggesting that these errors cumulatively prejudiced him. To the extent Taylor has asserted a cumulative error claim, he offers no argument or citation to the record or the law to explain how the purported evidentiary errors harmed him, and we discern no prejudice on this record. See id. at 18 ("[A] defendant who wishes to take advantage of the [cumulative error] rule … should explain to the reviewing court just how he was prejudiced by the cumulative effect of multiple errors.").

11

*Judgment affirmed. All the Justices concur.*